UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

===

DANIELLE M. MARTIN and
JAMES B. MARTIN,

                              Plaintiffs,

          v.

JOSEPH R. BEIGHT and
HILLTRUX TANKLINES, INC.,

                              Defendants.

===

**REPORT AND
RECOMMENDATION**

13-CV-855A

## I.  INTRODUCTION

The Hon. Richard J. Arcara referred this case to this Court under 28

U.S.C. § 636.  Pending before the Court is a motion (Dkt. No. 23) by plaintiff

Danielle Martin ("Martin") and her husband James for summary judgment

regarding the issues of negligence and serious injury.  Martin seeks summary

judgment for negligence because defendant Joseph Beight ("Beight") has

admitted never seeing her before striking her car with his tanker truck.  Beight

also pled guilty to an unsafe lane change and admitted that his tanker truck has

known blind spots.  As for serious injury, Martin submits information from her

treating physician and three independent medical examiners.  All four doctors

unanimously conclude that Martin has objective limitations in the range of motion

of her back and that the limitations stem from the accident.  Beight opposes

summary judgment as to negligence by downplaying the guilty plea and by

raising the possibility of Martin's comparative negligence.  Beight notes that

Martin has admitted to using her cellular telephone while driving just before the

accident.  Beight notes further that Martin admitted that when a traffic merger put

her car next to his truck, she accelerated to pass the truck and thereby might

have filled a space that he thought was safe for a lane change.  As for the

serious injury threshold, Beight downplays Martin's injuries as little more than

disc herniations with some soft tissue injuries.  Beight contends that Martin has

not offered enough objective evidence of the limitations in her range of motion.

The Court has reviewed all of the papers and exhibits filed and has

deemed the motions submitted under Rule 78(b) of the Federal Rules of Civil

Procedure ("FRCP").  For the reasons below, the Court respectfully recommends

denying Martin's motion as to negligence but granting it as to the serious injury

threshold.

## II. BACKGROUND

This case concerns a motor vehicle accident that occurred on September

21, 2012.  The accident occurred on the northbound Niagara Thruway I-190 ("I-

190"), just north of milepost 13.33 and the connection to the Youngmann

Memorial Highway I-290 ("I-290").  As a preliminary matter, to help the reader

understand the accident scene, the Court takes judicial notice of several

undisputed facts that will place the parties' contentions in context.  Milepost

13.33 of I-190 corresponds to Exit 16, connecting the northbound I-190 to the

2

westbound I-290.  North of Exit 16, traffic from the westbound I-290 merges into

the northbound I-190 and proceeds to the South Grand Island Bridge.  The

merger increases the number of lanes in the northbound I-190 from two,

momentarily to four, and then to three until the bridge.  An overhead view of the

merging northbound lanes looks like this, courtesy of Google Maps; the wedge at

the right shows the merger:



The following image from Google Maps shows the merger looking south; in this view, the I-290 lanes appear on the left and the I-190 lanes appear on the right:



This Google Maps image shows the merger from the same point looking north toward the bridge; the two right lanes from I-290 traffic soon will change to a single lane:



Finally, this Google Maps image shows the northbound I-190 lanes north of the merger.  The accident in question occurred approximately in the area between the two upper left I-190 badges:



The two parties directly involved in the accident each took one side of the I-190/I-290 merger on September 21, 2012.  Martin spent the morning in Cheektowaga, New York addressing some healthcare insurance paperwork at

her husband's union hall.  After running that errand, Martin entered her car, a

2004 Chevrolet Impala.  Martin then found her way to I-290 to head home to

Grand Island, New York.  The drive prior to the accident appears to have been

unremarkable.  Martin does not recall any unusual characteristics of the traffic

that day.  The weather was overcast but with clear visibility; the Court takes

judicial notice of the weather information for that day, as posted on the website

Weather Underground.[1]  Martin was using her cellular telephone to talk to her

mother, but she had the phone mounted to one of her car vents and was using

the speakerphone function.  Meanwhile, Beight spent his morning hauling his

daily delivery of either gasoline or diesel fuel to the Smokin' Joes gasoline station

on the Tuscarora Indian Reservation in Niagara County.  Beight made the

delivery from Ohio, where he lives.  Beight makes this delivery five days a week,

though not necessarily Monday through Friday.  Beight was making his delivery

in a 2012 or 2013 Western Star tanker truck.  That particular truck was not

exclusively his to use, but he used it most of the time.  Beight knew that the truck

had blind spots.  (*See* Dkt. No. 23-7 at 60.)  At the time of the accident, Beight

had been working for defendant Hilltrux Tanklines, Inc. ("Hilltrux") for about five

years and had no disciplinary history.  Beight's route to Smokin' Joes included

the northbound I-190.

---

[1]http://www.wunderground.com/history/airport/KBUF/2012/9/21/DailyHistory.html?req_city=Ton
awanda&req_state=NY&req_statename=New+York&reqdb.zip=14150&reqdb.magic=1&reqdb.
wmo=99999 (last visited April 29, 2015).

The heart of the pending motion and the entire case is what happened as Martin and Beight approached the South Grand Island Bridge from their respective routes.  After the I-190/I-290 merger, Martin wound up in the rightmost of the three lanes heading toward the bridge.  Martin was content to stay in that lane; she used the E-ZPass electronic toll collection system, and staying in the rightmost lane lined her up with the E-ZPass-only tollbooth that was the rightmost of the available tollbooths.  Martin saw Beight's truck to her left after the merger and accelerated in response.  Martin accelerated because she does not like driving next to large trucks.  (*See* Dkt. No. 23-5 at 52 ("And I remember saying, I hate these F-ing trucks.  They scare me.  And my mother says, just remember they are bigger than you.  Get out of their way.  And I just had a feeling to get ahead of him, not pass him, but get ahead of him so he could see me.  I didn't want to be a in a blind spot.").)  Beight also used E-ZPass, but the I-190/I-290 merger left him in the center of the three lanes heading toward the bridge.  Beight wanted to move one lane to the right to line up his truck with the E-ZPass-only tollbooth.  Beight's truck did not have fender mirrors, but using his other mirrors, he saw that the rightmost lane had cars in it for the entire length of his truck.  Beight turned on his turning signal after the I-190/I-290 merger and waited for the traffic to clear.  He was driving about 55 mph at the merger but began slowing down from that point forward.  When he saw a car in the rightmost lane behind him flash its headlights, he interpreted the flashing as an all-clear signal.  Based

8

on his own view from the mirrors and the headlight flashing, Beight decided that the rightmost lane was clear.  He used his turning signal for a total of about three seconds before pulling his truck into the rightmost lane.

The rightmost lane was not clear.  Beight could not see Martin's car over his right front fender.  The right front end of Beight's truck hit the left rear fender and bumper of Martin's car as the truck changed lanes.  The force from the truck and the direction in which it was applied caused Martin's car to spin approximately 90° counterclockwise, to veer left across the other two lanes of traffic, and to slam front-first into the concrete median separating the northbound and southbound lanes.  Martin's car sustained relatively mild damage at the left rear fender and bumper but severe damage at the front end.  (*See* Dkt. No. 23-2 at 22–26.)  The car was a total loss.  Beight never saw Martin and did not realize that he hit her until he saw her veer left.  (*See* Dkt. Nos. 23-3 at 13; 23-5 at 65; 23-7 at 43; 23-7 at 50.)  State police responding to the accident ticketed Beight for an unsafe lane change, in violation of New York Vehicle and Traffic Law ("VTL") § 1128(a),[2] and for following too closely, in violation of VTL § 1129(a).[3] (*See* Dkt. No. 23-2 at 2.)  Beight pled guilty to the Section 1128(a) charge by mailing in his ticket with a guilty plea checked off and with appropriate payment.

---

[2] "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."  N.Y. Veh. & Traf. Law § 1128(a) (McKinney 2015).

[3] "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."  N.Y. Veh. & Traf. Law § 1129(a) (McKinney 2015).

Beight pled guilty because he lives in Ohio and did not want to make a trip to Western New York solely to contest the ticket.  The ultimate disposition of the Section 1129(a) ticket is not clear from the record.

Martin herself suffered injuries that have remained with her to this day. Martin felt shoulder, chest, back, and neck pain at the time of the accident.  (*See* Dkt. No. 23-8 at 2.)  In subsequent medical evaluations, doctors diagnosed herniated discs at C6–7 and asymmetric strength in her arms, her right arm being weaker than her left.  Surgeon Dr. John Fahrbach described Martin's limitations as follows: "Objectively she demonstrated worsening weakness in her right extremity.  Strength testing was as follows: bicep 4-/5; triceps 4-/5, wrist extensors 4+/5 and intrinsic hand muscles and grip strength were 4+/5 and cervical range of motion continued to be limited as follows: extension to about 20 degrees (60 normal); flexion to about 20 degrees (50 normal); lateral rotation bilaterally to about 30 degrees (45 normal)."  (Dkt. No. 23-11 at 3.)  Martin eventually chose to pursue surgical options.  With Dr. Fahrbach, Martin underwent C5–6 and C6–7 fusion surgery on March 19, 2013.  Even with extensive follow-up treatments and therapy sessions, the surgery did not improve Martin's strength or range of motion.  According to Dr. Fahrbach, Martin "is permanently restricted in the use of her cervical spine and in her ability to push, pull, lift, turn and twist.  In addition, the weakness in her upper right extremity is most probabl[y] permanent in that it has been present since the motor vehicle

10

accident and has not been improved with surgical intervention." (*Id.* at 7.)

Meanwhile, Martin has expressed that her injuries have changed her daily life.

Martin, a self-described "stay at home mom" (Dkt. No. 23-3 at 91), now has

difficulty cleaning, shopping, and keeping up with her children.  The inability to

maintain her former life has caused Martin constant frustration. (*See, e.g.*, Dkt.

No. 23-3 at 122 ("She has trouble lifting laundry.  She has trouble playing with

her kids.  She 'just wants to be normal again.'"); Dkt. No. 23-6 at 20–21 ("I can't

do my vacuuming.  I can't do—I—I can try to do light dusting.  That I will attempt,

but anything of any lifting causes pain or—I have weakness, so it's left to the rest

of the family.").)

　　　Martin underwent independent medical examinations as well.  Dr. James

McGlowan performed an independent orthopedic examination on January 24,

2013.  Dr. McGlowan made the following range of motion measurements:

> Cervical Spine: Forward flexion is 50/60°, extension 50/60°, rotation
> is 50/60° bilaterally, side bending is 40/45° bilaterally.
> Spurling's test is negative.
>
> Bilateral Shoulders: Forward flexion 160/170°, abduction 160/170°,
> external rotation 60/80°, internal rotation 60/80°.
>
> Bilateral Elbows: Flexion 140/140°, extension 0/0°, supination
> 80/80·, pronation 80/80°, wrist extension 60/60°, volar flexion
> 60/60°, ulnar deviation 30/30°, radial deviation 20/20°.
>
> Biceps, biceps and brachioradialis reflexes are 2 and bilaterally
> symmetrical. Sensory and motor testing of the ulnar, median
> and radial nerves are bilaterally symmetrical and within normal
> limits. Strength is 4/5 in the bilateral upper extremities.
>
> Lumbosacral Spine: Forward flexion is 50/60°, extension 10/20°,

11

rotation is 10/15° bilaterally and side bending is 20/25°.
(Dkt. No. 23-3 at 132.)  Although Dr. McGlowan recommended continued therapy

and not surgery, he concluded that "[w]ith a reasonable degree of medical

certainty the above diagnoses are causally related to the accident of

record." (*Id.* at 133.)  Dr. McGlowan repeated this conclusion after a second

examination on May 2, 2013. (*See generally* Dkt. No. 23-10 at 52–54.)  Dr. Gary

Kostek made similar findings when he performed an independent chiropractic

examination on January 22, 2013.  Specifically, Dr. Kostek made these findings:

> Lumbar range of motion actively measures 51/90° of flexion, 21/30°
> of extension, 21/45° of right lateral flexion, 24/45° of left lateral
> flexion, 30/45° of right rotation, 40/45° of left rotation.  The
> claimant complained of lower back and cervical pain at the
> end range of flexion.  The claimant complained of right lower
> back pain at the end range of right lateral flexion and right
> rotation.

> Cervical compression testing in a neutral position reproduced right
> cervical pain. Cervical distraction testing provides relief of
> cervical spine complaints.  Bilateral shoulder depression
> testing reproduced pain at the cervical/thoracic junction
> centrally.

> Dynamometer testing for grip strength of this right handed individual
> measures 17, 15 and 15 lbs. of grip strength on the right
> compared to 43, 42 and 36 lbs. of grip strength on the left.

(*Id.* at 137.)  Dr. Kostek concluded that "there is a causal relationship between

the claimant's injuries and the accident of 09/21/12.  The accident that day has

aggravated pre-existing degenerative changes of the cervical spine." (*Id.* at 138.)

Finally, Dr. Louis Medved performed an independent neurological examination

on September 26, 2013.  Dr. Medved found that Martin's "[c]ervical range of

12

motion was restricted to 20° of forward flexion (normal 45°), 10° of extension (normal 45°), 60° of right lateral rotation and 50° of left lateral rotation (normal 90°)." (Dkt. No. 23-10 at 58.)  Medved concluded that Martin's "injuries are causally related to the motor vehicle accident of 09/21/12.  I am not aware of any pre-existing conditions that would affect her recovery." (*Id.* at 59.)

The medical opinions connecting Martin's injuries to the accident are important because of Martin's medical history.  In April 2012, just a few months before the accident, Martin tripped and fell over a pothole in a retail store parking lot. (*See generally* Dkt. No. 23-5 at 269–80.)  The fall resulted in jaw, neck, and shoulder injuries that required physical and chiropractic therapy.  Martin sued the retailer and settled the case for $90,000.  Martin testified at her deposition that her jaw pain occasionally recurs.  Martin stopped receiving treatments for her injuries after a few months.

Martin commenced this case by filing her complaint on August 23, 2013. The complaint contains two claims.  In the first claim, Martin and her husband accuse Beight and Hilltrux of negligence in several ways related to the operation of the truck.  In the second claim, Martin's husband asserts a loss of consortium and household services.

Martin filed the pending motion on January 21, 2015, seeking summary judgment for the issues of negligence and serious injury.  With respect to negligence, Martin emphasizes Beight's admissions that his truck had blind

13

spots, that he never saw Martin before impact, and that he relied on an

unidentified driver's flashing headlights rather than using his own senses.  Martin

also argues that Beight's guilty plea is an admission to the act charged and

should count as at least some evidence of negligence.  As for the serious injury

threshold, Martin points to documentation of her disc herniations and restrictions

in range of motion.  Dr. Fahrbach provided numeric percentages of the loss of

range of motion in Martin's cervical spine.  Dr. Fahrbach also described Martin's

injuries based on information including strength tests and MRI findings.  Dr.

Fahrbach concluded that all of Martin's injuries resulted from the accident.

Martin emphasizes that even the independent examining physicians concluded

that Martin suffered significant injuries and that the injuries resulted from the

accident.

Beight opposes the pending motion in all respects.  Regarding the issue of

negligence, Beight downplays his guilty plea as only some evidence of

negligence and not an indication of negligence *per se*.  Beight emphasizes that

he mailed in his guilty plea as a matter of convenience.  As for the lane change in

itself, Beight argues that he has traveled the I-190/I-290 merger numerous times.

He checked his mirrors, used his turning signal, and allowed vehicles to pass

them on the right.  At the same time, according to Beight, Martin was distracted

by the use of her cellular telephone and accelerated when the merger of traffic

put her next to Beight's truck.  "A reasonable jury could find that she saw the

14

tanker truck's turn signal on and sped up in order to beat the truck to the

tollbooth." (Dkt. No. 25-6 at 14.)  Beight also argues that he needed to move

right to comply with Vehicle and Traffic Law § 1120(b), which required him to

keep right while driving under speed.  Regarding the issue of serious injury,

Beight considers Martin's injuries to comprise herniated discs and soft tissue

injuries.  According to Beight, herniations and soft tissue injuries by themselves

do not suffice to cross the serious injury threshold.  Beight discounts Dr.

Fahrbach's opinions by arguing that Dr. Fahrbach found Martin's cervical range

of motion within normal limits and did not restrict her activities.  Dr. Fahrbach,

according to Beight, also failed to offer objective medical evidence to

substantiate his opinions regarding any aspect of Martin's lumbar spine and her

ability to move her cervical spine.  Beight disagrees that Dr. Fahrbach provided

numeric percentages for Martin's range of motion.  Instead, Beight would have

the issue of serious injury, and all issues about damages, go to the jury.  Beight

cites Dr. McGowan's examinations and that doctor's conclusions that Martin's

"complaints and the surgery performed upon her resulted from a pre-existing

condition and were not causally related to the accident." (Dkt. No. 25-6 at 8.)

Beight also notes that all three doctors who performed independent medical

examinations found that Martin could engage in activities of daily living.  Beight

concludes that summary judgment is not possible with so many disagreements

between the medical experts.

15

## III. DISCUSSION

### A. Summary Judgment Generally

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . . More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted)

### B. Negligence

The Court now turns to Martin's argument for summary judgment on the issue of negligence. New York's general standard for negligence is

16

straightforward and familiar.  "In short, a court always is required to undertake an initial evaluation of the evidence to determine whether the plaintiff has established the elements necessary to a cause of action in negligence, to wit: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof."  *Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531, 535 (N.Y. 1981) (citation omitted).  For this part of Martin's motion, the parties do not dispute the first element and sharply dispute the second element; the third element is inapplicable.  In the context of motor vehicle accidents, a presumption of negligence applies to rear-end collisions but not collisions resulting from lane changes.  *See Krynski v. Chase*, 707 F. Supp. 2d 318, 322 (E.D.N.Y. 2009) ("Under New York law, a rear-end collision establishes a prima facie case of liability against the rear vehicle and imposes a duty of explanation on the operator of that vehicle.") (internal quotation marks and citations omitted).  Violations of the VTL can provide some evidence of negligence.  *See Ando v. Woodberry*, 168 N.E.2d 520, 521 (N.Y. 1960) ("Since a prior plea of guilt represents an admission, it is not obnoxious to the hearsay rule. Accordingly, the courts of this State, as well as of other jurisdictions, have generally sanctioned the receipt in evidence in a negligence action of a prior plea of guilty to a traffic violation.") (citations omitted).  Drivers who plead guilty usually will have a chance to explain their conduct; only an unexcused violation will rise to negligence *per se*.  *See, e.g., Baker v. Joyal*, 771 N.Y.S.2d 269, 270

17

(N.Y. App. Div. 2004) ("[O]nly an unexcused violation of the Vehicle and Traffic Law constitutes negligence per se . . . . Plaintiff offered no evidence whatsoever to contradict defendant's reasonable excuse for crossing into the wrong lane and no evidence that defendant caused the initial collision with Joyal's vehicle.") (citations omitted); *Lowell v. Peters*, 770 N.Y.S.2d 796, 798–99 (N.Y. App. Div. 2004) ("[I]t is well settled that where a person violates a statute without an adequate excuse and causes the harm that the statute was created to prevent, such violation is negligence per se.") (citations omitted).  Additionally, "[a]lthough an apportionment of some fault to Plaintiff for the accident will not entirely preclude Plaintiff from recovering damages, a genuine issue of material fact as to whether Plaintiff was comparatively negligent in causing the accident will preclude summary judgment in Plaintiff's favor."  *Moe v. U.S.*, 668 F. Supp. 2d 497, 508 (W.D.N.Y. 2009) (Arcara, *C.J.*) (citation omitted).

Here, ambiguity about why Beight did not see Martin will have to await resolution by a jury.  Beight has admitted that his truck had blind spots and that he never saw Martin until after the accident.  *Cf. Zummo v. Holmes*, 869 N.Y.S.2d 447, 448 (N.Y. App. Div. 2008) ("Plaintiff made a prima facie showing of entitlement to summary judgment on the issue of liability.  Plaintiff was driving in the right lane when defendant Holmes, who was driving a tractor trailer in the lane to plaintiff's left, attempted to merge into plaintiff's lane when his lane ended, at which point the tractor trailer struck plaintiff's vehicle.")  Beight relied in part on

18

a flashing headlight signal, rather than his own judgment exclusively, to decide that the rightmost lane was clear.  Beight also pled guilty to a VTL violation, which constitutes an admission and has some probative value.  Nonetheless, Beight has raised the excuse of pleading guilty "to be done with it," which is to say for administrative convenience since he lives out of state.  The weight that an excuse of administrative convenience should receive is a matter for a jury.  *See Ando*, 168 N.E.2d at 523 ("What the defendant Nichols is actually arguing is that, when he pleaded guilty, he 'really didn't mean what he said.'  This claim, however, goes to the weight of evidence and entitled the defendant not to exclusion of the plea, but to an 'opportunity to explain' it.") (citations omitted); *accord Lohraseb v. Miranda*, 848 N.Y.S.2d 440, 441 (N.Y. App. Div. 2007) ("A defendant is generally given an opportunity to explain the circumstances surrounding a guilty plea to a traffic infraction, such as the convenience of entering a plea rather than traveling to Virginia to contest the ticket . . . .") (citing *Ando*; other citation omitted).  Additionally, the Court notes one minor and one major fact that introduce a reasonable possibility of some comparative negligence.  The minor fact is that Martin was using a cellular telephone for the duration of her trip, including the moment of the accident.  Martin's cellular telephone was set to the speakerphone function and was mounted to a vent clip. A reasonable jury nonetheless could decide that the use of the telephone created an improper distraction.  *Cf. Rhoney v. U.S.*, No. 08-CV-0097A, 2010 WL

19

598572, at *3 (W.D.N.Y. Feb. 18, 2010) (Arcara, *J.*) (denying summary judgment where "plaintiff was traveling between 35 and 40 miles per hour in a 30 mile-per-hour zone and may have been talking on a cell phone at the time of the accident. This evidence raises a triable issue of fact as to whether plaintiff's speed and/or inattentiveness contributed to the accident.") (citations omitted).  The major fact that might expose Martin to comparative negligence is her decision to accelerate to avoid driving next to Beight's truck.  Martin has admitted that she does not like driving next to large trucks and that she wanted to get ahead of Beight.  How much of the truck Martin had to clear and when she started accelerating are not certain.  Even if Martin did not speed, she might have accelerated rapidly enough to distort Beight's judgment that the rightmost lane was clear for him.  Such a conclusion is not so utterly beyond the range of reasonable judgments that the Court must take that issue away from the jury.  *Cf. Teller v. Anzano*, 694 N.Y.S.2d 780, 782 (N.Y. App. Div. 1999) ("Notwithstanding plaintiff's protestations to the contrary, the jury could have inferred that plaintiff was accelerating to pass the truck on the right side in close proximity to the intersection while his line of sight was obstructed by the truck.").  Accordingly, the Court recommends denying Martin's motion with respect to negligence.

### C. Serious Injury

The Court next turns to Martin's argument for summary judgment as to the serious injury threshold.  "Notwithstanding any other law, in any action by or on

behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss."  N.Y. Ins. Law § 5104(a) (McKinney 2015).  "'Serious injury' means a personal injury which results in . . . permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; [or] significant limitation of use of a body function or system."  *Id.* § 5102(d).  Courts often wrestle with "the sometimes frustrating task of deciding when evidence presented on a motion for summary judgment meets the 'serious injury' threshold, an elusive standard that all too frequently escapes facile and final resolution."  *Brown v. Achy*, 776 N.Y.S.2d 56, 57 (N.Y. App. Div. 2004) (citation omitted).  New York courts nonetheless have crafted some important guidelines.  "In order to prove the extent or degree of physical limitation, an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury.  An expert's *qualitative* assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system."  *Toure v. Avis Rent A Car Sys., Inc.*, 774 N.E.2d 1197, 1200 (N.Y. 2002) (citations omitted).  Disc herniations by themselves do not suffice to cross the threshold, but herniations

supported by an objective expert affidavit will suffice.  *Compare, e.g., Coward v. Delgado*, 800 N.Y.S.2d 344, 2005 WL 465165, at *6 (N.Y.C. Civ. Ct. 2005) (granting a defense motion for summary judgment where "a diagnosis of a bulging or herniated disc in and of itself does not constitute a 'serious injury' as contemplated in section 5102(d) of the Insurance Law") (citations omitted) *with Fabiano v. Kirkorian*, 761 N.Y.S.2d 288, 289 (N.Y. App. Div. 2003) (denying a defense motion for summary judgment where "the plaintiff, who has a herniated disc, submitted, among other things, an affirmation of his orthopedist which specified the decreased range of motion in his lumbar and cervical spines, and explained that his injuries are permanent and causally related to the motor vehicle accident.  The orthopedist's opinion, supported by objective evidence, was sufficient to raise a triable issue of fact.") (citations omitted).  A finding of a serious injury is a prerequisite for damages but not a conclusive finding as to what any award for damages should be.  *See Van Nostrand v. Froehlich*, 844 N.Y.S.2d 293, 300 (N.Y. App. Div. 2007) ("We hold . . . that serious injury is quintessentially an issue of damages, not liability.  In the event a plaintiff at a damages trial fails to sustain the burden of establishing serious injury, the plaintiff is not entitled to any recovery despite proof of common law liability.  If the serious injury threshold is established by a plaintiff at a damages trial, the jury will render a monetary award that fairly and justly compensates the plaintiff for all loss.") (citations omitted); *Kreuzer v. Edward S. Gordon Co.*, 526 N.Y.S.2d 1, 2 (N.Y.

22

App. Div. 1988) ("Once the jury found that plaintiff had not suffered a 'serious injury,' there was no right of recovery for non-economic loss.").

Bearing in mind that Martin still has to prove what any damages award should be, she has provided enough evidence to cross the serious injury threshold. Martin suffered two disc herniations that eventually warranted surgery. The surgery did not alleviate her symptoms. Martin also suffered motor weakness in her arms that left her right arm notably weaker than her left. Martin's treating physician and all three independent medical examiners quantified the loss of her range of motion and concluded that the loss resulted from the accident. Under these circumstances and with all medical experts in agreement that quantitative limitations happened, no reasonable jury could deny that Martin meets the statutory definition of a serious injury. The Court thus recommends granting Martin's motion with respect to the issue of serious injury.

## IV. CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends denying Martin's motion for summary judgment (Dkt. No. 23) with respect to the issue of negligence but granting it with respect to the issue of a serious injury.

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below. Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14

23

days.  *See* 28 U.S.C. § 636(b)(1); FRCP 72.  "As a rule, a party's failure to object

to any purported error or omission in a magistrate judge's report waives further

judicial review of the point."  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003)

(citations omitted).

      SO ORDERED.

                /s/ Hugh B. Scott
                HONORABLE HUGH B. SCOTT
                UNITED STATES MAGISTRATE JUDGE

DATED: April 29, 2015